UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FAUSTO R. ORDONEZ,

    Petitioner,

v.

MAYRA JAKELYN
BENITEZ-GUILLEN,

    Respondent.

Case No. 2:18-CV-1191
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court for consideration of Respondent Mayra Jakelyn Benitez-Guillen's ("Benitez-Guillen") *Motion to Dismiss* (ECF No. 25), Petitioner Fausto R. Ordonez's ("Ordonez") *Memorandum in Opposition* (ECF No. 30), and Benitez-Guillen's *Reply* (ECF No. 38). For the reasons stated below, the Court **DENIES** the *Motion to Dismiss*. (ECF No. 25).

### I.

F.O. is a minor child from Honduras. Benitez-Guillen is his mother; Ordonez is his father. All three are Honduran citizens. Ordonez and Benitez-Guillen never married but lived together in Honduras at the time of F.O.'s birth. They separated in June of 2016 but shared parental authority and custody rights over F.O.

In December of 2017, Benitez-Guillen fled from Honduras with F.O. On December 22, 2017, Benitez-Guillen and F.O. reached the United States border at Ysleta Port of Entry in El Paso, Texas. The Department of Homeland Security ("DHS") determined that Benitez-Guillen and F.O. were inadmissible to the U.S. because they lacked the necessary documents. Nevertheless, the DHS did not immediately remove Benitez-Guillen and F.O., presumably because Benitez-Guillen intended to apply for asylum in the United States. The DHS then issued

Benitez-Guillen and F.O. notices to appear, paroled them, and, on December 26, 2017, released Benitez-Guillen and F.O. from custody and into the United States.

On October 5, 2018, Ordonez filed a petition for the return of an abducted child under the Hague Convention, implemented in the United States by the International Child Custody Abduction Remedies Act (the "ICARA"), 22 U.S.C. § 9001, *et seq.* On December 3, 2018, Benitez-Guillen applied for asylum under the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1101, *et seq.* Benitez-Guillen and F.O. are scheduled to appear for a preliminary hearing before the Cleveland Immigration Court in June of 2019. On February 12, 2019, Benitez-Guillen filed this Motion to Dismiss under Rule 12(b)(1), arguing that this Court lacks subject matter jurisdiction over this action because the ICARA and the INA irreconcilably conflict.

## II.

Implemented through ICARA, the Hague Convention has two stated objectives: "a) to secure the prompt return of children wrongfully removed or retained in any Contracting State; and b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, art. 1. It accomplishes these objectives through the return remedy. *Abbott v. Abbott*, 560 U.S. 1, 8–9 (2010). This means that a "wrongfully removed" child is returned to the home country; a return order does not determine the permanent legal or physical custody over the child. *Id.* at 3–4. By focusing on the child's return to the home country, the Hague Convention aims to "restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court." *Friedrich v. Friedrich*, 78 F.3d 1060, 1064 (6th Cir. 1996). And the return remedy only determines which country must decide the custody dispute; it does not make that decision.

The INA provides the foundation for immigration law in the United States, including asylum. Asylum is a form of discretionary relief under section 208 of the INA, 8 U.S.C. § 1158, that precludes an alien from being subject to removal by the Attorney General, creates a path to lawful permanent resident status and citizenship, and affords a variety of other benefits. *See R-S-C v. Sessions*, 869 F.3d 1176, 1180 (10th Cir. 2017). The INA provides the Attorney General and the Secretary of the Homeland Security with discretion to grant asylum. 8 U.S.C. § 1158(b)(1)(A). Because asylum is a discretionary form of relief from removal, the applicant bears the burden of showing both eligibility for asylum and why the Attorney General or Secretary should exercise discretion to grant this relief. 8 U.S.C. § 1158(b)(1). To qualify for asylum under the INA, an applicant must either have suffered past persecution or have a "well-founded fear of persecution on account of race, religion, nationality, membership, in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), *incorporated by* 8 U.S.C. § 1158(b)(1)(B)(i). A grant of asylum "does not convey a right to remain permanently in the United States ...." 8 U.S.C. § 1158(c)(2).

This Court has not yet analyzed the merits of Ordonez's petition. Further, neither the Secretary of Homeland Security nor the Attorney General have determined whether Benitez-Guillen and F.O. qualify for asylum under the INA. Nevertheless, Benitez-Guillen argues that this Court must dismiss Ordonez's Hague petition because the potential grant of asylum confers a right to remain in the country regardless of any potential judicial orders under the Hague Convention. In her view, dismissing Ordonez's petition for lack of subject-matter jurisdiction "would be the proper course of action in order to preserve the sense and purpose of both statutes." Resp't.'s Mot. to Dismiss at 7. The Court disagrees.

The purpose of the Hague Convention and ICARA is to reduce child abductions. *See* ICARA, 22 U.S.C. § 9001 ("Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention."). To dismiss this case would run contrary to the purposes of the Hague Convention and the ICARA because anyone who violates the Hague Convention could then evade its protections simply by applying for asylum, which Benitez-Guillen concedes is a right granted by statute. *See* Resp't.'s Mot. to Dismiss at 6. Creating a right to evade the Hague Convention's protections and procedures does not preserve the sense and purpose of the Hague Convention.

Next, Benitez-Guillen argues that the Court lacks subject matter jurisdiction because the INA and the ICARA irreconcilably conflict. The ICARA, however, grants this Court original jurisdiction over Hague Convention petitions. ICARA, 22 U.S.C. § 9003(a). The INA does not strip this Court of that jurisdiction. While Benitez-Guillen correctly points out that the INA drastically limits judicial review of asylum determinations, *see* 8 U.S.C. § 1252(a)(2)(A), she does not explain how a court presiding over a Hague petition constitutes judicial review of one's asylum status. In fact, when reviewing a return of child petition, courts only determine the proper country to review the custody dispute related to an allegedly abducted child. Courts analyzing these petitions do not consider the asylum status of the parties.

Benitez-Guillen also argues that the Court lacks jurisdiction to order the return of the child based on the pending applications for asylum. Although not ripe in this case, the only federal court to address the issue of whether a grant of asylum (under the INA) bars a district court's order to return a child (under the ICARA) explicitly held that it does not. *See Sanchez v. R.G.L.*, 761 F.3d 495, 510 (5th Cir. 2014) ("[t]he asylum grant does not supercede the enforceability of a district court's order that the children should be returned to their mother, as

4

that order does not affect the responsibilities of either the Attorney General or the Secretary of Homeland Security under the INA."). In *Sanchez*, the Fifth Circuit also found that "[n]o authority has been offered to support the argument that the discretionary grant of asylum confers a right to remain in the country despite judicial orders under this Convention." *Id.*

Finally, all case law that the Court has found suggests that courts maintain subject matter jurisdiction over ICARA claims regardless of the asylum status of a respondent and/or minor child. That is because no federal court has found a lack of subject matter jurisdiction when presiding over a Hague petition case that also involved asylum applications. *See Sanchez v. R.G.L.*, 761 F.3d at 510–11; *Lopez v. Alcala*, 547 F. Supp. 2d 1255 (M.D. Fla. 2008); *In re Hague Child Abduction Appl.*, No. 08-2030, 2008 U.S. Dist. LEXIS 97048 (D. Kan. Mar. 17. 2008); *Gonzalez v. Gutierrez*, 311 F.3d 942, 947 (9th Cir. 2002); *Hernandez v. Pena*, No. 15-3235, 2016 WL 8275092 (E.D. La. July 20, 2016). The Court can assume that the courts in those cases had subject matter jurisdiction over the Hague petitions since "federal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction to entertain an action exists." *Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 890 (6th Cir. 1998); *see Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 593 (2004) ("by whatever route a case arrives in federal court, it is the obligation of both district court and counsel to be alert to jurisdictional requirements."); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) ("every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.") (citations omitted).

In conclusion, this Court has original jurisdiction over Ordonez's return of child petition under 22 U.S.C. § 9003(a). The INA does not strip this Court of that jurisdiction. Therefore, the Court has subject matter jurisdiction over this case.

### III.

Accordingly, the Court **DENIES** Benitez-Guillen's *Motion to Dismiss* (ECF No. 25).

**IT IS SO ORDERED.**

5-28-2019
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE